UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CHANNELL HOLIDAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 2:16-CV-525-PPS-JPK |
| | ) | |
| E.I. DU PONT DE NEMOURS AND | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This is an old case that was reassigned to me late last year. [DE 248.] It is one of a series of related toxic tort lawsuits brought in this district by various groups of East Chicago residents.[1]  With one exception (the *Alvarez* case), all of these matters have yet to proceed past the pleading stage. The plaintiffs in this case are 240 former residents of the West Calumet Housing Complex or attendees of Carrie Gosch Elementary School in East Chicago. Plaintiffs claim various entities negligently exposed them to harmful levels of lead, arsenic, and other toxins by introducing these hazardous materials decades ago on land adjacent to West Calumet and Carrie Gosch.

---

[1] *See Barbee et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-193 (Apr. 26, 2017); *Baker et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-429 (Nov. 15, 2017); *Alvarez et al. v. Atlantic Richfield Company et al.*, No. 2:17-CV-414 (Oct. 31, 2017); *Adams et al. v. Atlantic Richfield Company et al.*, No. 2:18-CV-375 (Oct. 4, 2018). *See also S.A. et al. v. E.I. Du Pont de Nemours and Co. et al.*, No. 2:22-CV-359 (Nov. 22, 2022). In addition to the matters pending before this Court, I am advised that a group of the plaintiffs included in this action are separately pursuing claims against the City of East Chicago and various other state and municipal entities, as part of two consolidated actions currently pending in Lake Superior Court. *See G.J.2 et al. v. Indiana State Dept. of Health, et al.*, No. 45D05-1803-CT-3 (Mar. 13, 2018). In state court, the plaintiffs assert that the government knowingly and intentionally constructed West Calumet and Carrie Gosch on polluted land, let plaintiffs live there unwittingly, and failed to warn them about the contamination.

Defendants E.I. du Pont de Nemours and Company and the Chemours Company (collectively, "DuPont") and Hammond Lead Products, LLC, Halstab, LLC, Hammond Group, Inc., Halstab, LLC, and Halox, LLC (collectively, "Hammond Lead") have moved to dismiss Plaintiffs' amended complaint and strike class allegations in the complaint pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. [DE 250; DE 252; DE 254.] For the reasons that follow, DuPont's motion to strike will be denied as moot, and the motions to dismiss will be granted in part and denied in part.

## Procedural Background

One might reasonably wonder how a case filed in 2016 is still at the pleading stage. To put it bluntly, the case is a mess. Here's how we got here. Plaintiffs originally filed the case in state court; it was removed to federal court in late 2016. [DE 1; DE 4.] Plaintiffs sought to remand the case [DE 39], and following completion of the briefing on the motion to remand, the originally named defendants moved to dismiss the case. [DE 66; DE 67.] The Court stayed briefing on the motions to dismiss pending a ruling on the motion to remand. [DE 74.]

In March 2018, the Court denied Plaintiffs' motion to remand because defendants had properly removed the case under the Class Action Fairness Act. [DE 101.] The Court declined to address an alternative basis for removal – the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *Id.* at 4. Plaintiffs asked the Court to amend its order denying remand to include a certification for interlocutory appeal. [DE 103.] Ultimately, the parties stipulated to stay the case pending the outcome of an appeal of the Court's order

granting remand in a related action, *Baker et al. v. Atl. Richfield Co. et al.*, Nos. 19-3159, 19-

3160, 962 F.3d 937 (7th Cir. 2020). [DE 134.]

In *Baker*, Judge Van Bokkelen found that removal was improper based solely on

the federal officer removal statute, 18 U.S.C. § 1442(a)(1), and he therefore remanded the

case. On June 18, 2020, the Seventh Circuit reversed and remanded Judge Van

Bokkelen's order granting remand in *Baker*, finding that the case could proceed in federal

court because removal was proper under the federal officer removal statute. 962 F.3d at

940. After the Seventh Circuit's opinion in *Baker* was handed down, the stay in this case

was lifted, and Plaintiffs (who are represented by the same counsel as the *Baker*

plaintiffs) subsequently withdrew their request for a certificate of appealability of the

order denying remand. [DE 145; DE 146.]

With subject matter jurisdiction secure, the Court took up motions to dismiss and

motions for judgment on the pleadings filed by the originally named defendants. [DE

149 (Hammond Lead); DE 151 (Atlantic Richfield); DE 155 (DuPont).] In August 2021,

the motions were granted in part. [DE 220.] In summary, Judge Van Bokkelen held that

Plaintiffs timely filed their claims, as they adequately alleged they did not learn of the

danger posed by the contamination until July 2016 (*id.* at 7); the EPA and Indiana

Department of Environmental Management were not necessary parties for Plaintiffs' tort

claims (*id.* at 8); Atlantic Richfield, as a property owner who processed hazardous

materials on its land, owed no duty of care not to pollute neighboring property,

requiring dismissal of Plaintiffs' negligence claim as to Atlantic Richfield (*id.* at 10); while

DuPont and Hammond Lead owed Plaintiffs a duty of care to Plaintiffs, Plaintiffs merely alleged "exposure" to contamination and thus failed to state a specific injury, requiring dismissal of their negligence and strict liability claims as to DuPont and Hammond Lead (*id.* at 11–13); Plaintiffs' intentional infliction of emotional distress claims failed due to insufficient allegations that Defendants acted intentionally or recklessly (*id.* at 14); and Plaintiffs' negligent infliction of emotional distress claims failed along with the underlying negligence claims (*id.* at 15).

After the initial complaint was dismissed without prejudice, Plaintiffs sought leave to amend their complaint and re-assert negligence and negligent infliction of emotional distress claims. [DE 226; DE 226-1.] The Plaintiffs dropped Atlantic Richfield from the proposed amended complaint and sought to proceed only against DuPont and Hammond Lead. Defendants opposed the amendment, arguing the class allegations were frivolous and any named plaintiffs seeking to assert negligence claims still failed to adequately plead specific physical injuries. [DE 227.]

The motion to amend was handled by Magistrate Judge Kolar. Judge Kolar granted Plaintiffs leave to amend – but he did so with some important qualifications. [DE 242.] First, he noted that of the 251 named plaintiffs, all alleged they had suffered "an increased risk" of developing one of thirty-four different physical conditions as a result of Defendants' alleged negligence. Only 70 of those plaintiffs alleged some form of present physical injury linked to the alleged contaminants – for example, Dena Jackson claimed she suffered from fatigue, irritability, stomach aches, and depression. *Id.* at 7.

But the remaining 181 plaintiffs alleged no "present physical injury." In light of Judge Van Bokkelen's prior rulings, Judge Kolar reasoned that, although those 181 plaintiffs had "fleshed out these allegations, by describing the *potential* injuries in more detail," that detail failed to save their claims. This was because they still failed to plead a present physical injury, or point to any new case authority holding that "a risk of injury is itself a kind of injury" that forms a basis for a negligence claim. *Id.* at 9–10. In short, because 181 of the plaintiffs failed to specifically allege a present physical injury, Judge Kolar denied leave to amend to assert negligence claims as to those plaintiffs.

As for the 70 plaintiffs who had alleged a present physical injury, Judge Kolar found that 67 of them had sufficiently pled some form of present illness for which they claimed they were at "increased risk" due to exposure to the contamination. The other three — Daniel Gomez Sr., Micaela Morales, and Annette Velez — alleged that they suffered from "general conditions" that had "no clear link" to the contaminants at issue, and so their request for leave to amend to re-assert negligence and negligent infliction of emotional distress claims were also denied. *Id.* at 11. As to the negligence claims against DuPont and Hammond Lead, the key—as Judge Kolar rightly acknowledged—is that in this context, the law requires that plaintiffs claim an *actual injury*. It is not enough to claim mere exposure to toxins, heightened risk of developing an illness, or some "subclinical injury" derived from exposure. *See id.* at 8–10.

In sum, Judge Kolar determined that the failure of 184 plaintiffs to adequately plead an actual injury was "substantive, not procedural," so "there [was] no cause to

allow [those] plaintiffs . . . to re-plead based on the same theory" that was previously briefed and dismissed. *Id.* As a result, only 67 Plaintiffs were granted leave to assert a negligence claim against DuPont and Hammond Lead based on their alleged present physical injuries. [*See* DE 226-1 (Proposed FAC), ¶¶ 36–39, 49–52, 57, 59–61, 72–76, 106–09, 112–16, 121–23, 157–60, 168–72, 183–91, 193–96, 221–28, 248–51.]

Nevertheless, the Plaintiffs, in their operative Second Amended Complaint, appear to give Judge Kolar the back of their hand. The complaint proposes things (and parties!) Judge Kolar specifically told them they cannot proceed on. To make matters worse, the approach taken by Plaintiffs has made my task much more difficult. The identified paragraph numbers in the proposed First Amended Complaint vary from the paragraph numbers in the First Amended Complaint filed on the docket following Judge Kolar's order granting leave to amend. [*Compare* DE 226-1, *with* DE 245.] As explained in greater detail below, this complicates things. Judge Kolar carefully considered which individual plaintiffs in the proposed First Amended Complaint adequately alleged present physical injuries, and he identified these individual plaintiffs with reference to paragraph numbers in the proposed First Amended Complaint.

Plaintiffs did not seek leave to add new parties and only requested leave to amend with respect to the new factual allegations in their proposed First Amended Complaint. Yet the FAC Plaintiffs actually filed [DE 245] adds a slew of new allegations for various individual plaintiffs. And it changes the paragraph numbering. That has led to me having to go through the tedious chore of going back through each individual's

allegations and confirm they are the same individual plaintiff for whom Judge Kolar determined leave to amend was appropriate, making an already complex docket even more confusing to navigate.

As to the Plaintiffs' NIED claims, Judge Kolar observed that the Court had previously ruled that Plaintiffs could not state an NIED claim, absent an injury sufficient to sustain a negligence claim, based on alleged "emotional distress" damages. [DE 242 at 12 (citing DE 220 at 14–15).] However, following Judge Van Bokkelen's opinion and order, the Indiana Supreme Court issued an opinion potentially supporting an alternative interpretation of state law on this issue and which now muddies the water. *See Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022). In light of this new authority, Judge Kolar was not "certain" the proposed NIED claims would fail on a motion to dismiss, so he granted leave to amend with respect to the NIED claims. [DE 242 at 13–14.] All of the named plaintiffs were granted leave to assert NIED claims. *Id.* at 15. Finally, Judge Kolar denied leave to amend to assert claims for "medical monitoring," finding that Indiana law does not provide an independent cause of action for medical monitoring. *Id.*

Plaintiffs then attempted to file their First Amended Complaint. [DE 243.] Judge Kolar noted that this amended complaint named at least one plaintiff, Georgia Hampton (*id.*, ¶ 46), who was not originally named in the lawsuit, and Plaintiffs never sought leave to add additional parties. Three other named plaintiffs may have been named in the prior complaint with their names spelled differently. And several individuals

previously identified as minor plaintiffs were now identified by their full names. Plaintiffs were ordered to modify their amended complaint to address these deficiencies. [DE 244 at 2.]

Plaintiffs re-filed their First Amended Complaint, addressing the issues with various plaintiffs' names. [DE 245.] Defendants moved to dismiss the complaint. Then, to make matters even more complicated, while the pending motions were being briefed, Plaintiffs decided to abandon their putative class claims. With Defendants' consent, they sought leave to file a Second Amended Complaint.[2] [DE 267; DE 267-1.] Judge Kolar granted leave to amend. [DE 269; *see* DE 270 (SAC).] The Second Amended Complaint simply omits reference to class allegations by adding "placeholder" paragraphs reflecting that the underlying allegation is omitted. The only other substantive difference is the elimination of allegations of plaintiff N.M., who was dismissed from the case by stipulation after Plaintiffs filed the First Amended Complaint. [DE 261.] It was in the midst of all this confusion that the case got reassigned to me. [DE 248.]

There is a lot to unravel here. Helpfully, the Second Amended Complaint with the "placeholder" paragraphs has the effect of streamlining the process by maintaining the original paragraph numbers in the First Amended Complaint. That allows me to take up the parties' briefing without requiring them to re-file everything. So, while the parties' briefs refer to allegations in the First Amended Complaint, in substance the arguments

---

[2] Noting Plaintiffs have abandoned their class claims, DuPont's pending motion to strike will be denied as moot.

address identical allegations transposed into the operative, Second Amended Complaint. [*Compare* DE 245 (FAC), *with* DE 270 (SAC).]

With this exhausting (and frustrating) procedural background in mind, I now turn to the allegations of Plaintiffs' operative complaint.

### The Second Amended Complaint

Plaintiffs are 240 East Chicago residents who previously resided at the West Calumet Housing Complex, a public housing project, or attended Carrie Gosch Elementary School. [DE 270 (Second Amended Complaint); *see* DE 260 (status report summarizing individual plaintiffs named in amended complaint, and identifying any plaintiffs named in original complaint omitted in amended complaint).] West Calumet was constructed in the early 1970s on the site of a former lead refinery, which the EPA later designated as a Superfund Site. The school was adjacent to the housing project and closed in 2016. The City of East Chicago informed residents of West Calumet that they would have to move out of the housing complex in July 2016. In 2017, the complex closed, and in 2018, it was demolished.

The pollution at the heart of this case dates back over a century. U.S. Smelter and Lead Refinery, Inc. operated a smelter from 1906 to 1985 that produced lead dust and other hazardous substances, causing contamination of the Superfund Site. From 1910 to 1949, Plaintiffs claim DuPont operated a facility next door that manufactured lead arsenate insecticide, which allegedly "contributed to pollution" of the land. Hammond Lead had its manufacturing operations at two locations south of the Superfund Site,

9

which Plaintiffs claim "also contributed to its contamination with hazardous substances," including lead and arsenic.

The EPA has been involved with the Superfund Site for over two decades. In August 2005, the EPA listed among "parties potentially responsible for the contamination at [the Superfund Site]" DuPont, Hammond Lead, and Atlantic Richfield Company and BP West Coast Products, LLC (originally named defendants who were dismissed from the case), along with unidentified "others." In 2009, the Superfund Site was placed on the National Priorities List, and the EPA in 2014 filed suit against ARCO and DuPont in connection with pollution on the Superfund Site.  That case was assigned to me, *see* Cause No. 2:14-CV-312-PPS-PRC, and was resolved with a consent decree, pursuant to which the defendants agreed to pay roughly $26 million to clean up the property.

For decades, residents of West Calumet claim they were unwittingly exposed to contamination directly caused by Defendants. Although Defendants knew of the contamination and its dangers, Plaintiffs assert that they "intentionally" and "actively concealed" the fact and extent of the pollution and the dangers it posed. At the same time, Plaintiffs acknowledge the fact that the government investigated pollution at the Superfund Site for many years, put the Superfund Site on the National Priorities list, and pursued an enforcement action against ARCO and DuPont to remediate the pollution dating back to 1910. Despite all this action around the Superfund Site years prior to the closure of West Calumet, Plaintiffs claim they were first notified of the contamination

and its dangers in July 2016, when the Mayor of East Chicago notified them about results of the EPA's testing at the Superfund Site. While the government collected samples from the Superfund Site for many years during its investigation, Plaintiffs claim they only received these samples in 2016.

That November, West Calumet residents sought to intervene in the government's enforcement action, hoping to weigh in on the remediation plan. I denied the motion to intervene and noted that the proposed clean-up plan was mailed to all residents within two miles of the Superfund Site and notice of the lodging of the consent decree was filed years earlier, in September 2014. *See United States v. Atlantic Richfield Co.*, 324 F.R.D. 187, 189, 191–92 (N.D. Ind. 2018). Plaintiffs nonetheless allege that they were unaware of their exposure to hazardous levels of contamination caused by Defendants' pollution at the Superfund Site until they received notice of the EPA's testing results from the City of East Chicago in July 2016.

All of the Plaintiffs have re-asserted claims for negligent infliction of emotional distress. A subset of 170 plaintiffs also seek to assert negligence claims. [*See* DE 270, ¶¶ 344–79.] They claim Defendants, at various times between 1910 and 1985, introduced contaminants (including lead, arsenic, and "other toxins") into the air, soil and/or groundwater, causing them to develop health conditions and/or suffer an increased risk of various illnesses linked to exposure to hazardous levels of lead, along with severe emotional distress due to their fear of exposure to toxic pollution. Defendants allegedly breached a duty not to permit or allow hazardous substances from their facilities to

contaminate Plaintiffs' properties and expose Plaintiffs to such substances, as well as a duty to warn Plaintiffs of the release or threatened release of such substances into the soil. *Id.*, ¶¶ 347–54, 375–76. At bottom, the negligence counts re-assert that Plaintiffs were exposed to hazardous levels of lead "or other toxins" while residing at West Calumet or attending Carrie Gosch, which Defendants introduced into the air, soil, and/or groundwater decades earlier, and as a consequence they suffer "physical, mental, and emotional harm as a direct and proximate result" of their exposure to lead and other toxins. *Id.*, ¶¶ 318–27. Plaintiffs seek costs of medical monitoring, monetary damages for "personal injuries, pain, and suffering," and an award of punitive damages. *Id.* at 171.

As pertains to Plaintiffs' allegations of present physical injuries caused by Defendants' alleged negligence, I note that the complaint only provides factual allegations about health conditions directly linked to exposure to hazardous levels of lead. [DE 270, ¶¶ 317–25.] Plaintiffs' allegations about injuries linked to "other toxins" are vague and undeveloped. Accordingly, and in keeping with the Court's prior rulings in this case, any named plaintiff asserting a claim of negligence must have adequately alleged a present physical injury included among the illnesses caused by exposure to hazardous levels of lead. [*See* DE 242 at 11–12.]

### Discussion

Before diving into the substance of the pending motions, let's start with a brief discussion of the standards that govern my decisionmaking. Under Federal Rule of Civil Procedure 8(a), Plaintiffs' complaint must contain "a short and plain statement showing

that [he] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6)

permits a party to move for dismissal if the complaint fails to state a claim upon which

relief can be granted. Fed. R. Civ. P. 12(b)(6).

At this stage, I accept the complaint's allegations as true and draw all reasonable

inferences in favor of the plaintiffs. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th

1002, 1006 (7th Cir. 2021). However, to avoid dismissal under Rule 12(b)(6), a claim for

relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires a

plaintiff to plead sufficient "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood

of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)). The Seventh Circuit has explained that a plaintiff must plead facts that

"suggest a right to relief that is beyond the speculative level," which requires alleging

"enough details about the subject-matter of the case to present a story that holds

together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson

v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[S]heer speculation, bald assertions,

and unsupported conclusory statements" in the complaint fail to meet this burden. *Taha*,

947 F.3d at 469.

## I.   Negligence Claims

Under Indiana law, a negligence claim requires a showing that: (1) the defendant

owed the plaintiff a duty of care; (2) the defendant breached that duty by allowing

conduct to fall below the applicable standard of care; and (3) the plaintiff suffered compensable injury proximately caused by the defendant's breach. *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). Defendants first contest Plaintiffs' claims that they owed a duty of care. They don't appear to question Judge Van Bokkelen's prior ruling that Plaintiffs adequately assert a duty not to contaminate. [*See* DE 220 at 11.] However, DuPont asserts Plaintiffs fail to adequately plead a duty to warn. [DE 251 at 22–23.]

Essentially DuPont asks me to ignore Plaintiffs' specific allegation that Defendants kept the pollution a secret from Plaintiffs, and they were only informed of the extent of the pollution in 2016, because this allegation is "conclusory" and "implausible" in context. To be sure, there are facts alleged in the complaint detailing a history of EPA investigation and enforcement activity in connection with the Superfund Site. It's possible that such activity reasonably put at least some of the named plaintiffs on notice of the contamination of the land prior to receiving a letter from the City of East Chicago in 2016. But they tell me a different story, and it strikes me as a plausible one. It may be that a preponderance of evidence reflects Plaintiffs reasonably knew of the contamination and Defendants did not owe a duty to warn based on the EPA listing the Superfund Site on its National Priorities list, or based on its enforcement action filed a little over two years prior to this suit. But the question at this stage is whether Plaintiffs have plausibly alleged that they could not have reasonably known of their injuries caused by exposure to hazardous levels of lead contamination because Defendants

14

intentionally failed to inform Plaintiffs about their polluting activities. Whether this will in fact be borne out in discovery is anybody's guess. But for now, it's enough to say that it is certainly plausible. As a result, it would be premature to dismiss Plaintiffs' negligence claims based on a failure-to-warn theory. With the benefit of a more fulsome record after discovery has been taken, Defendants can of course raise the argument anew at summary judgment. [*Accord* DE 220 at 11.]

Next, Defendants challenge Plaintiffs' claims that they suffered injuries proximately caused by their alleged introduction of hazardous levels of lead and "other toxins" on their property. As I previously pointed out, Plaintiffs do not meaningfully allege a connection between their alleged injuries and any contaminant other than lead. Because Plaintiffs fail to allege facts clearly linking their general categories of alleged injuries to exposure to contaminants other than lead, any injuries allegedly caused by the introduction of those substances onto the land are entirely speculative. Accordingly, Plaintiffs' negligence claims based on "other toxins," aside from lead, are dismissed with prejudice for failure to plead causation.

However, Plaintiffs adequately allege Defendants proximately caused their alleged injuries based on ingestion of hazardous levels of lead. Under Indiana law, proximate causation requires both "factual causation" and "legal causation." *Fifth Third Bank v. CSX Corp.*, 306 F. Supp. 2d 841, 853 (N.D. Ind. 2004). *See also Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 445 (7th Cir. 2009) ("Courts remain entirely free to dismiss a claim . . . where the pleadings do not permit a reasonable inference of proximate

cause."). As courts in this case and elsewhere across this district have repeatedly noted, it is not necessary for Defendants' contamination to be "*the* proximate cause, but only *a* proximate cause, of the Plaintiffs' injuries to succeed on a claim of negligence." *See Rolan v. Atl. Richfield Co.*, 2017 WL 3191791, at *18 (N.D. Ind. July 26, 2017) (citing *Carey v. Ind. Physical Therapy, Inc.*, 926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010)) (finding resolution of causation issue required "a more factually intensive inquiry" inappropriate for resolution at the pleadings). [*See also* DE 220 at 12–13.]

Defendants take issue with the lack of detail linking their alleged pollution decades ago to Plaintiffs' present physical injuries caused by lead exposure. DuPont notes that Plaintiffs repeatedly allege that they ingested lead that was introduced onto their land by Defendants. But, DuPont argues, that allegation alone "does not make their causation allegations plausible" – I should peel the onion back further to assess if the allegation is plausible in the proper "context." [DE 251 at 21–22.] DuPont notes the complaint alleges the City of East Chicago offered lead testing to all West Calumet residents, but Plaintiffs do not claim that they took advantage of this testing or were found to have elevated lead levels as a result of such testing. *Id.* at 22. In other words, because Plaintiffs have had "literal years" to develop the factual foundation of their claims, and still fail to specifically articulate that they have developed a medical condition "*as a result of* exposure to particular contaminants" left there by the Defendants, I am told their claims must fail for lack of causation. [DE 255 at 12.]

A subset of the named plaintiffs have specifically asserted that they ingested hazardous levels of lead, that Defendants introduced this hazardous material onto their property, and they suffer illnesses of the variety caused by exposure to hazardous levels of lead. The story Plaintiffs tell strikes me as entirely plausible, even if Defendants would prefer additional factual allegations more specifically tying *their* alleged lead contamination to Plaintiffs' claimed injuries. At this stage, the allegations put Defendants on notice of Plaintiffs' theory of harm, and that is all Rule 8(a) requires. In sum, following the lead of fellow courts in this district evaluating virtually identical claims, I decline to dismiss Plaintiffs' negligence claims based on exposure to hazardous levels of lead due to a failure to adequately plead causation.

Now it is on to Plaintiffs' allegations of present physical injuries. Plaintiffs tell me that each person listed in paragraph 345 of the Second Amended Complaint (the "Count I Plaintiffs") have pled a claim for negligence resulting in physical injuries, consistent with the Court's prior rulings in this case. [DE 268; *see* DE 270, ¶ 345.] But that cannot possibly be the case. The Court expressly declined leave to amend to re-assert negligence claims for all but 67 plaintiffs named in the proposed amended complaint. [DE 242 at 15; *see* DE 226-1 (Proposed FAC), ¶¶ 36–39, 49–52, 57, 59–61, 72–76, 106–09, 112–16, 121–23, 157–60, 168–72, 183–91, 193–96, 221–28, 248–51.] Judge Kolar could not have been more clear – only 67 plaintiffs presented allegations of present physical injuries in keeping with Judge Van Bokkelen's prior rulings. The balance of Plaintiffs attempting to assert negligence claims were denied leave to amend with prejudice. [DE 242 at 10–12.]

Defendants request that I dismiss the negligence claims asserted by any "Count I Plaintiffs" not expressly granted leave to re-assert negligence claims, because those claims plainly exceed the scope of Judge Kolar's order granting leave to amend. [DE 251 at 14; *see* DE 255 at 10–11.] Plaintiffs were denied leave to amend for several of these individual plaintiffs after finding their new allegations failed to do anything but elaborate on their "*potential* injuries in more detail." For example, the amended complaint contains new allegations of exposure for certain plaintiffs, new allegations of present physical injuries for others, new allegations about the risk of certain named plaintiffs' children developing health problems, and new allegations about physical problems caused by exposure to hazardous levels of lead. [*See, e.g.*, DE 270, ¶¶ 18, 14, 28, 320–23. *See also* DE 251-6 (redline reflecting changes in allegations from proposed amended complaint, DE 226-1, to the First Amended Complaint, DE 245 – the allegations of which have been transposed to the operative Second Amended Complaint, DE 270).]

   Frankly, I cannot make heads or tails of Plaintiffs' decision to re-assert negligence claims on behalf of named plaintiffs for whom the Court expressly denied leave to amend. From the tenor of their response brief, it seems that Plaintiffs believe that all of the "Count I Plaintiffs" *do* adequately allege a present physical injury. [DE 268 at 4.] Yet Plaintiffs make no attempt to refute the notion that the Court previously denied leave for a subset of "Class I Plaintiffs" to re-assert negligence claims. The Court has already ruled, and I see no reason to question, that allegations of emotional distress as an injury are insufficient to sustain a standalone negligence claim under applicable law. [DE 220 at

18

12–13; DE 242 at 10–12.] Tracking the allegations from the proposed First Amended Complaint to the operative complaint, it is clear that leave to amend was expressly denied for the majority of "Class I Plaintiffs." Only a subset of the Class I Plaintiffs were permitted to re-plead.[3]

Accordingly, only those plaintiffs identified in paragraphs 33–36, 46–49, 54, 56–58, 65–69, 98–101, 104–08, 113–15, 148–51, 159–63, 175–83, 185–88, 212–18, and 238–41 of the amended complaint may proceed with their negligence claims. I agree that those are the only named plaintiffs who sufficiently allege present physical injury to state an ordinary negligence claim against Defendants. The balance of the Class I Plaintiffs' negligence claims are dismissed with prejudice for failure to adequately allege injury.

## II.    NIED Claims

Let's shift gears and examine Plaintiffs' negligent infliction of emotional distress claims. Judge Van Bokkelen dismissed Plaintiffs' initial NIED claims, finding there could be no NIED claim under Indiana law unless accompanied by a properly pled, "ordinary" negligence claim. [DE 220 at 14–15.] While not all Plaintiffs have a viable negligence claim, all of them nevertheless seek to re-assert NIED claims. They claim that

---

[3] [DE 270, ¶¶ 33–36, 46–49, 54, 56–58, 65–69, 98–101, 104–08, 113–15, 148–51, 159–63, 175–83, 185–88, 212–18, 238–41. *Compare* DE 245, ¶¶ 33–36, 46–49, 54, 56–58, 65–69, 98–101, 104–08, 113–15, 148–51, 159–63, 175–83, 185–88, 212–18, 238–41, *with* DE 226-1, ¶¶ 36–39, 49–52, 57, 59–61, 72–76, 106–09, 112–16, 121–23, 157–60, 168–72, 183–91, 193–96, 221–28, 248–51. *See generally* DE 242; DE 251-6.] For completeness sake, I note that the named plaintiff identified in the proposed First Amended Complaint as "N.M. by next friend Fatin Muhammed" was not included in the original complaint filed in the case. [DE 260.] The relevant allegations in the proposed First Amended Complaint can be found at paragraph 228, and are omitted with a placeholder at paragraph 219 of the operative complaint. [*Compare* DE 226-1, *with* DE 270.] While Judge Kolar granted N.M. leave to re-assert a negligence claim, the parties identified this discrepancy following his order granting leave to amend and subsequently stipulated to dismissal of N.M.'s claims from the operative complaint without prejudice. [DE 260 at 1.]

Defendants' contamination has caused them "significant emotional distress," including fear of contracting illnesses associated with exposure to the contaminants, fear that their family members and guests will contract future illnesses associated with such exposure, and generalized fear that the "contamination has affected their health." [DE 270, ¶¶ 374–78.] They further assert medical monitoring is included as a facet of damages for this type of negligence claim under state law. *Id.*, ¶ 379.

In *Spangler v. Bechtel*, the Indiana Supreme Court observed, "The right to seek damages for emotional distress in actions for negligence *often referred to as actions for negligent infliction of emotional distress*, is carefully circumscribed under Indiana jurisprudence." 958 N.E.2d 458, 466 (Ind. 2011) (emphasis added). Indiana law had "never permitted . . . an action seeking damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional injury on another," and such "independent, stand-alone actions for negligent infliction of emotional distress are not cognizable." *Id.*

As Judge Van Bokkelen previously observed, if *Spangler* controls, the result is straightforward – only those named plaintiffs with cognizable negligence claims based on their present physical injuries may also pursue NIED claims against Defendants. *See, e.g.*, *Vestal v. Heart of CarDon, LLC*, 2018 WL 3008638, at *12 (S.D. Ind. June 15, 2018) (applying *Spangler*) (NIED "is not a stand-alone cause of action, but instead is permitted . . . where the 'defendant's breach of a legal duty to the plaintiff' causes a 'direct impact' upon the plaintiff"). But, again, things are not always so simple. As highlighted by Judge

20

Kolar in granting Plaintiffs leave to amend, he believed Indiana law governing NIED claims may have been altered by the Indiana Supreme Court's decision in *Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022). To be more specific about it, Judge Kolar was "uncertain" about whether *Community Health* changed the landscape on NIED claims. To his credit, and out of an abundance of caution, Judge Kolar allowed the complaint to be amended so the validity of the standalone NIED claims could be fully briefed for my consideration on the pending motions to dismiss.

In *Community Health*, the plaintiffs sued a healthcare provider for negligence based on an employee accessing their medical records without authorization. The plaintiffs' negligence claims sounded in theories of direct liability for negligent supervision, training, and retention, as well as vicarious liability. They did not allege a physical impact or injury – just that they suffered emotional distress as a result of the defendant's negligence with respect to its handling of their medical records. *Id.* at 379. The Court noted that under *Spangler*, "emotional-distress damages are recoverable in negligence-based claims only when a party can satisfy (1) the modified-impact rule or (2) the bystander rule." *Id.* (citing 958 N.E.2d at 466, 471).

I can set the bystander rule aside for our purposes. Under that rule, a standalone NIED claim is permitted absent a direct physical impact on the plaintiff only if the plaintiff has "witnessed or come to the scene soon after the death or severe injury of certain classes of relatives." *Spangler*, 958 N.E.2d at 467. Suppose a mother is at a bus stop with her child when she witnesses her child being run over by an inattentive

motorist who is texting and driving. The mother in that case would have a viable NIED claim as a bystander. There is no plausible claim that any of the Plaintiffs in this case can be reasonably called bystanders.

But what about the other theory of negligent infliction of emotional distress – the modified-impact rule? *Community Health* itself provides little analysis of the rule, beyond noting that *Spangler* requires that the plaintiff "personally sustained a physical impact," in addition to emotional distress damages. 185 N.E.3d at 379 (citing 958 N.E.2d at 467). The Court found in straightforward fashion that the "undisputed facts establish[ed] that [the plaintiffs] suffered no physical impact" as a result of the misuse of their private medical records.

Digging a little deeper, the Supreme Court has explained that this rule "is known as the 'impact rule' because of the requirement that there be some physical impact on the plaintiff before recovery for mental trauma will be allowed," and it has been the law of the land in Indiana for over "one hundred years." *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991) (citing *Kalen v. Terre Haute & I.R.R. Co.*, 47 N.E. 694 (Ind. Ct. App. 1897)). "The rule, as applied in Indiana, has three elements: (1) an impact on the plaintiff; (2) which causes physical injury to the plaintiff; (3) which physical injury, in turn, causes the emotional distress." *Id.* (citing *Boston v. Chesapeake & O. Ry.*, 61 N.E.2d 326, 327 (Ind. 1945)).

*Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989 (Ind. 2006) is a useful illustration cited favorably by the Court in *Spangler*. In *Cook*, the plaintiffs were involved in a

harrowing incident on a aircraft shortly after the 9/11 tragedy. Essentially, the plaintiffs contended that the airline (and others) were negligent in allowing another passenger to board the aircraft who later engaged in menacing behavior in flight. That passenger marched up and down the aisle, threatened others on board and perpetually smoked cigarettes despite rules to the contrary. 857 N.E.2d at 991–92. The plaintiffs were justifiably terrified by the incident. They argued that breathing smoke from a lit cigarette and experiencing vibrations from stomping feet caused a direct physical impact, as well as a "constructive" impact "by virtue of the physical effects on the [plaintiffs'] vital body functions," like breathing, heart rate, and acuteness of their senses. *Id.* at 998.

With this backdrop, the Court examined case law on the physical impact requirement, *id.* at 998–99, and concluded that "constructive impact" in the form of "physical changes" can satisfy the rule. However, the plaintiffs merely alleged "what can best be described as the human body's natural response to fear and anxiety," which fell short of a "physical change" like, for example, "the destruction of healthy lung tissue" as a result of a physician's failure to diagnose a plaintiff's lung cancer. *Id.* at 998 (citing *Alexander v. Scheid*, 726 N.E.2d 272, 284 (Ind. 2000) (holding that patient suffering from the destruction of healthy lung tissue due to physician's failure to diagnose cancer was sufficient for negligent infliction of emotional distress)). Applied to the complaint in this case, only the subset of named plaintiffs who have adequately alleged manifest health conditions linked to exposure to hazardous levels of lead plead facts from which one

could plausibly infer "physical changes" that form a "constructive" physical impact to state a NIED claim.

The Court in *Cook* then considered whether smelling cigarette smoke and feeling floor vibrations could form a direct physical impact. 857 N.E.2d at 999. While the Court noted plaintiffs' theory "at the very least . . . stretches the outer limits of the impact requirement," it accepted that plaintiffs may experience sensations related to exposure to smoke and vibrations that "may be characterized as physical impact," even if "certainly very 'slight,'" and went on to consider whether plaintiffs' alleged "mental anguish is 'not likely speculative, exaggerated, fictitious, or unforeseeable.'" *Id.* (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1221 (Ind. 2000)). The evidence suggested plaintiffs' fear and anxiety were real but transitory, and they never sought medical treatment for their alleged impacts. The Court accordingly concluded "the physical impact in this case was slight to nonexistent," and "speculative," so "allowing an emotional distress claim to proceed based on . . . lingering mental anguish would essentially abrogate the requirements of Indiana's modified impact rule." *Id.* at 1000.

As I see it, the takeaway from *Cook* is just how skeptical the Indiana Supreme Court is of standalone NIED claims. The Court acknowledged that NIED claims based on emotional distress alone face an uphill climb, and to the extent a plaintiff can assert a "direct impact" based on emotional distress, such a claim "stretches the outer limits of the impact requirement." 857 N.E.2d at 999. Adding to this, courts evaluating similar claims involving asbestos exposure have concluded that merely asserting the

24

"possibility" that an individual was exposed to asbestos and that exposure "may or may not produce physical injury" do not satisfy the modified-impact rule; but that actual exposure could form a direct impact under the rule. *Adams v. Clean Air Sys., Inc.*, 586 N.E.2d 940, 942 (Ind. Ct. App. 1992). *See also Dollar Inn, Inc. v. Slone*, 695 N.E.2d 185, 189 (1998) (construing *Adams*).

All of this brings me back to *Community Health*, and whether it worked a change in the law that permits all of the named plaintiffs to move forward with NIED claims, regardless of whether they allege underlying physical injuries sufficient to state ordinary negligence claims. The case does not meaningfully evaluate the "physical impact" requirement of the modified-impact rule and concludes in a single sentence that, under *Spangler*, the plaintiffs did not suffer any "physical impact themselves" as a result of the misuse of their medical records. 185 N.E.3d at 379. It is true that the Court suggested that "because emotional-distress damages are unavailable" to the plaintiffs, the "negligence claims must fail." *Id.* That language could be read to undermine the longstanding rule that plaintiffs must have a cognizable "direct impact" that is physical in nature, in addition to emotional distress, in order to proceed under the modified-impact rule. But I think that reads far too much into the opinion. It is essentially another way to say that the negligence-based claims failed for "lack of compensable damages" – insofar as emotional-distress damages are only recoverable for such claims where the modified-impact rule (or bystander rule) apply, and the record reflected that neither rule applied to the plaintiffs' claims. *See id.*

Few courts have evaluated this aspect of the Court's decision in *Community Health*. The Indiana Court of Appeals recently cited the case for the proposition that negligence claims alleging "only emotional distress damages" (*i.e.*, what Indiana law refers to as a NIED claim) "are subject to the modified-impact rule," and reaffirmed that the modified-impact rule "requires that the plaintiff sustain a physical impact." *Fox v. Franciscan All., Inc.*, 204 N.E.3d 320, 327 (Ind. Ct. App. 2023) (granting summary judgment on negligence claims, including NIED claim, based on defendant's invasion of plaintiffs' privacy, holding that "[l]oss of privacy does not consist of a physical impact [under *Community Health*], and it is undisputed that Plaintiffs here did not sustain physical impacts"). In the context of the authority that precedes it, it seems clear that *Community Health* is simply an application of the modified-impact rule, not a meaningful change in the law. As such, I see no reason to depart from the reasoning of Judge Van Bokkelen's prior order dismissing Plaintiffs' NIED claims to the extent they failed to adequately allege a standalone negligence claim. [DE 220 at 14.]

Accordingly, only those plaintiffs identified in paragraphs 33–36, 46–49, 54, 56–58, 65–69, 98–101, 104–08, 113–15, 148–51, 159–63, 175–83, 185–88, 212–18, and 238–41 of the amended complaint may proceed with NIED claims, as they are the only plaintiffs with sufficient allegations of present physical injuries to establish a "direct impact" under the modified-impact rule.

### III.    Statute of Limitations

Defendants' final argument for dismissal of Plaintiffs' claims is that the adult plaintiffs failed to file suit within the two-year statute of limitations. The limitations period started when Plaintiffs knew or, in the exercise of ordinary diligence, should have known of their injuries. *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009) (citing *Wheling v. Citizens Nat'l Bank*, 586 N.E.2d 840 (Ind. 1992)) (holding it is only necessary that "some ascertainable damage has occurred"). In asserting this affirmative defense, *see U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003), DuPont argues that "two key events" should have put Plaintiffs on notice to file their claims – the EPA listing the Superfund Site on the National Priorities List in April 2009, and the EPA's 2014 enforcement action against ARCO and DuPont. [DE 241 at 28.]

Analytically, this argument presents the same issues I have already considered in connection with Plaintiffs' negligence claims based on Defendants' alleged failure to warn them of the release or threatened release of lead contamination onto their land. Judge Van Bokkelen previously considered the same argument in light of the same allegations in the complaint and declined to dismiss on statute of limitations grounds, crediting Plaintiffs' allegations that they only became aware of the contamination or should have become aware of the contamination in July 2016, within the limitations period. [DE 220 at 5–7.] This ruling is further buttressed by a decision of the Indiana Court of Appeals in a parallel case. *State v. Alvarez*, 150 N.E.3d 206, 215–17 (Ind. Ct. App. 2020).

In short, I see no reason to depart from this reasoning, in light of the similarities between the relevant allegations. Even if Plaintiffs' allegations include facts that suggest Defendants may have a strong defense on the merits, I credit (at this point) their specific allegation that they did not discover their alleged exposure to lead contamination caused by Defendants until July 25, 2016, and therefore decline to dismiss the adult plaintiffs' claims under the two-year statute of limitations.

**ACCORDINGLY:**

DuPont's Motion to Strike [DE 252] is **DENIED AS MOOT**, in light of Plaintiffs' abandonment of their putative class claims in the Second Amended Complaint [DE 270].

The pending Motions to Dismiss [DE 250; DE 254] filed by DuPont and Hammond Lead are **GRANTED IN PART**, as follows:

With respect to Count I, only the individual plaintiffs identified in paragraphs 33–36, 46–49, 54, 56–58, 65–69, 98–101, 104–08, 113–15, 148–51, 159–63, 175–83, 185–88, 212–18, and 238–41 of the amended complaint [DE 245; *see* DE 270] were granted leave to amend and state a claim of negligence based on allegations of present physical injuries caused by Defendants' alleged breaches. Count I is therefore **DISMISSED WITH PREJUDICE** as to any other named plaintiffs, for failure to state a claim upon which relief can be granted.

With respect to Count II, only the individual plaintiffs identified in paragraphs 33–36, 46–49, 54, 56–58, 65–69, 98–101, 104–08, 113–15, 148–51, 159–63, 175–83, 185–88, 212–18, and 238–41 of the amended complaint [DE 245; *see* DE 270] state a claim of

ordinary negligence and sufficiently allege a direct physical impact, in addition to emotional distress, sufficient to state a NIED claim under Indiana's modified-impact rule. Count II is therefore **DISMISSED WITH PREJUDICE** as to any other named plaintiffs, for failure to state a claim upon which relief can be granted.

In all other respects, the Motions to Dismiss [DE 250; DE 254] are **DENIED**.

**SO ORDERED**.

ENTERED: September 20, 2023.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT